IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STANLEY BLACK & DECKER, INC, and STANLEY LOGISTICS, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>BEST GIFT TRADING CO., LTD, et al.,<br><br>    Defendants. | Case No.: 16-cv-00700 |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS'** ***EX PARTE*** **MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY TRANSFER OF THE DEFENDANT DOMAIN NAMES, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND <u>SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION</u>**

Plaintiffs Stanley Black & Decker, Inc. and Stanley Logistics, LLC (collectively "SBD" or "Plaintiffs"), submit this Supplemental Memorandum in support of SBD's *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary transfer of the Defendant Domain Names, a temporary asset restraint, expedited discovery, and service of process by email and/or electronic publication (the "*Ex Parte* Motion"). This filing responds to the Court's request for additional briefing on the issues of 1) irreparable harm, 2) an indication in the record where each Defendant's offer to sell product into this jurisdiction may be found and 3) the propriety of joinder. The below addresses the Court's concerns and demonstrates that the *Ex Parte* Motion should be granted.

**I.    IRREPARABLE HARM**

SBD brought this counterfeiting and trademark infringement action to combat the unauthorized use of the famous STANLEY brand by defendants in connection with the sale of

1

hand tools. Not only does the sale of unauthorized products financially harm SBD, it works an equally great, if not greater, harm to the reputation and goodwill associated with the famous STANLEY trademark.

As set forth in the attached declaration of Tracie Gildea, Director of Global Marketing, Stanley Black & Decker, a visual review of the products before the Court indicates a variation in the quality of the products. This varying level of quality is not in accordance with the quality standards of SBD. (Exhibit 1, ¶¶ 2-4.) Thus, hand tools of varying quality are being sold under the STANLEY brand for which SBD has no control.

This loss of control over the quality of products sold under the STANLEY trademark weakens the reputation of the brand and generates complaints by customers that unknowingly purchase an inferior counterfeit product. (*Id*.) In short, the presence of counterfeit STANLEY products in the marketplace threatens SBD's ability to control the quality of goods bearing the STANLEY brand and, when coupled with consumer complaints from inferior counterfeit products, is the precise type of irreparable harm that justifies the TRO sought by SBD. See, e.g., Ideal Indus., Inc. v. Gardner Bender, Inc., 612 F.2d 1018, 1026 (7th Cir. 1979) ("the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods.").

Moreover, the STANLEY brand is a famous brand that has been in use for over 100 years. (Exhibit 1, ¶ 3.) It is not a coincidence that the Defendants have used the exact same STANLEY mark, on the exact same products, and targeted SBD's customers. This evidences a clear intent to trade off of the goodwill associated with the STANLEY brand, earned at great expense and over decades, and is further evidence of the irreparable harm SBD will suffer. Nat'l

Fin. Partners Corp. v. Paycom Software, Inc., No. 14 C 7424, 2015 U.S. Dist. LEXIS 74700, at *39 (N.D. Ill. June 10, 2015).  As a result, issuance of the TRO is warranted.

## II.    THE OFFERS TO SELL STANLEY PRODUCTS TO ILLINOIS

In response to the Court's request to identify where in the record each defendant's offer to sell accused products into this jurisdiction is found, SBD submits attached Exhibit 2 which is a printout of each screen page associated with each defendant.  The source of each page is Exhibit 2 to the declaration of Adan Ayala (Doc. 10.).  Each page has been marked with the number that corresponds with the number assigned each Defendant on Schedule A.  In addition, the screenshots have been enlarged for ease of use but this has also impacted the quality of the printout.

## III.   JOINDER IS PROPER

Joinder is proper in this matter pursuant to Fed. R. Civ. P. 20 since the claims at issue here arise out of a series of transactions or occurrences and there are questions of law or fact common to all Defendants in the action.  Moreover, "federal policy favors joinder" since "it was designed to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits."  Gorence v. Eagle Food Ctrs., No. 93 C 4862, 1996 U.S. Dist. LEXIS 18806, at *7 (N.D. Ill. Dec. 16, 1996).  "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

Here, the evidence of record establishes that the Defendants at issue are part of a concerted effort to counterfeit SBD's STANLEY trademark.  As set forth by SBD in its opening brief and Amended Complaint, the Defendants operate a series of websites that share a number of critical similarities that indicate they are interrelated and work in concert.

Further demonstrating that a concerted counterfeiting effort is at issue is the remarkable similarity of the counterfeits to the genuine products. Not only must molds be made and designed that match genuine STANLEY products, a tell-tale sign that a concerted effort has been made is the yellow and black color scheme used with the counterfeits and the color tolerance of the color scheme shared by the accused products. (Exhibit 1, ¶¶ 7-10.) As SBD explains, its yellow and black color scheme is difficult to use and implement since the color yellow, without some form of control, will range from bright yellow to orange for not only the components that make up the products, but also for the product packaging and associated advertising materials. (*Id.*). A review of the accused products indicates that the yellow and black color scheme shows a remarkable color tolerance that matches that of genuine STANLEY products. Below is an example of how a counterfeit is nearly a perfect match to the original in nearly every aspect:

 

Counterfeit, Schedule A No. 10                                                                 Genuine

This color tolerance and match is found in the advertising used by the accused Defendants, it is present in the product packaging and it is also found in the components of the accused products. (*Id.,* ¶¶ 7-9.) Based on the difficulty to get the "right" yellow across multiple sources, and the fact that the accused products do so in all phases of the supply chain, demonstrates that the counterfeiting is a series of coordinated and related efforts that result in

4

products that closely resemble genuine STANLEY products. (*Id.*, ¶ 10.) That the counterfeiting faced by SBD is a concerted effort across the supply chain weights in favor of finding joinder proper in this instance:

> [T]o determine whether the joinder test is satisfied, pertinent factual considerations include whether the alleged acts of infringement occurred during the same time period, the existence of some relationship among the defendants, the use of identically sourced components, licensing or technology agreements between the defendants, overlap of the products' or processes' development and manufacture, and whether the case involves a claim for lost profits. The district court enjoys considerable discretion in weighing the relevant factors.

In re EMC Corp., 677 F.3d 1351, 1359-60 (Fed. Cir. 2012); Creighton v. Bristol-Myers Squibb & Co., 2013 U.S. Dist. LEXIS 164256, at *16-18 (N.D. Ill. May 10, 2013) (finding that allegations "regarding the improper design, manufacturing, and marketing of the drug are sufficient for joinder under the Fed. R. Civ. P. 20(a)" for all defendants involved in the supply chain).

In summary, as shown above, the counterfeiting SBD faces is not result of independent actors that have decided to independently counterfeit the STANLEY brand. If this was the situation, as SBD explains, a disparity in the appearance of the products being manufactured, packaged and advertised would be expected. However, the counterfeits show a remarkable similarity to genuine products in design, manufacture, packaging and advertising.

As a result, SBD's allegations regarding registration patterns, similarities among the Defendant Internet Stores and the similarities among the counterfeit STANLEY products for sale thereon, as well as the common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters making joinder proper in this instance.

In addition, there are questions of law or fact common to all Defendants in the action. These include the validity of the STANLEY trademark. Also common to all Defendants, are the

seven factors the Seventh Circuit has enumerated to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. See Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 461-462 (7th Cir. 2000).

Moreover, requiring SBD to purse the numerous counterfeiters trading off the reputation of the STANLEY brand in separate related suits does not relieve the burden on this Court, it will increase it. Filing separate suits will require the Court to process each suit, issue separate notices to the U.S. Trademark Office, process and rule on separate motions. Such a result is a key function of Fed. R. Civ. P. 20. The rule is designed "to promote trial convenience and expedite the resolution of lawsuits, thereby eliminating unnecessary lawsuits." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003).

Thus, SBD suggests that the Court permit the cases to remain as filed at least through the appearance and answer of any Defendant. The Court could then further evaluate the matter. This alternative approach to immediate severance promotes judicial efficiency by:

1. Eliminating the need for separate TROs.
2. Eliminating the need for separate Preliminary Injunction motions and Orders.
3. Eliminating the need for separate entries of default.
4. Eliminating the need for separate Default Judgment motions.

Moreover, not finding joinder could potentially require SBD to post a $10,000 bond for each Defendant making enforcement of its storied brand economically unfeasible.

In short, SBD recognizes that joinder is within the equitable discretion of the Court. SBD requests that the Court's discretion be exercised in its favor. It is a U.S. company that employs

6

thousands and has invested millions in a storied brand that has been in existence for over 100 years. On the other side of the equation, stand profiteering counterfeiters that go to great lengths to remain outside the reach of U.S. laws. The balance of equities clearly tips in SBD's favor making joinder proper in this instance.

### IV. PREVENTING THE TRANSFER OF ASSETS IS APPROPRIATE

SBD requests that the Court grant the *ex parte* restraint of Defendants' assets even if no TRO is entered so that SBD's right to an equitable accounting of Defendants' profits from sales of counterfeit STANLEY products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by SBD meaningless. Accordingly, this Court has the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995); Reebok Int'l Ltd. v. Marnatech Enters., Inc., 970 F.2d 552, 559 (9th Cir. 1992).

DATED: February 2, 2016

Respectfully submitted,

/s/ Keith A. Vogt
Keith A. Vogt, Esq.
(Bar No. 6207971)
1033 South Blvd, Suite 200
Oak Park, IL 60302
Telephone: 708.203.4787
E-mail: keith@vogtip.com

Perry J. Hoffman, Esq.
Perry Hoffman & Associates PC

7

(Bar No. 6211115)
2100 Sanders Road, Suite 200
Northbrook IL 60062
Telephone: 847-809-4285
E-mail: perry@WeDoIP.com

**ATTORNEYS FOR PLAINTIFF**

CERTIFICATE OF SERVICE

I certify that on February 2, 2016 a copy of the foregoing has been filed with the Clerk of the Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Keith A. Vogt